UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MARLENE FRIAS, *as Parent and Natural Guardian of A.F., and* MARLENE FRIAS, *Individually*,

Plaintiffs,

-v-

DAVID C. BANKS, *in his official capacity as Chancellor of the New York City Department of Education, and the* NEW YORK CITY DEPARTMENT OF EDUCATION,

Defendants.

24 Civ. 1767 (PAE)

OPINION & ORDER

PAUL A. ENGELMAYER, District Judge:

Plaintiffs Marlene Frias, individually and on behalf of her minor daughter A.F., filed this action against the New York City Department of Education ("Department" or "DOE") and its Chancellor, David C. Banks (together, "defendants"), pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq*. In 2022, after concluding that the Department's individualized education program ("IEP") for A.F. was inadequate, Frias unilaterally enrolled A.F. in a private school, International Academy for the Brain ("iBrain"). On May 30, 2023, Impartial Hearing Officer ("IHO") Jean Marie Brescia found this placement appropriate, and ordered the Department to fund A.F.'s tuition at iBrain and the costs of specialized transportation for A.F. from her home to iBrain for the period between April 5, 2022 and June 24, 2022, and for the 2022–23 school year.

In a decision issued October 30, 2024, the Court denied cross-motions for summary judgment challenging IHO Brescia's decision as to the Department's obligation to reimburse A.F.'s specialized transportation. *Frias v. Banks*, No. 24 Civ. 1767 (PAE), 2024 WL 4635315, at *2–3 (S.D.N.Y. Oct. 30, 2024) ("*Frias I*"). Finding IHO Brescia's order too "ambiguous" to

define the scope of the Department's reimbursement responsibilities, the Court remanded the matter on narrow grounds: to clarify whether the transportation reimbursements were to be calculated based on the days A.F. was enrolled at iBrain or on the days she actually attended the school. *Id.* at *3.

On February 26, 2025, IHO Ronald Abraham, to whom the case was re-assigned on remand, issued findings of fact and decision ("FOFD"). IHO Abraham ordered the DOE to reimburse plaintiffs $19,500 for the 2021–22 school year and $88,695 for the 2022–23 school year. Those tabulations were based on two premises: that (1) plaintiffs were entitled to travel reimbursements for the number of school days A.F. was enrolled at iBrain, not the days she actually attended the school; and (2) plaintiffs were entitled be awarded $375 per day for the 2021–22 school year and $405 per day for the 2022–23 school year. Plaintiffs appealed, challenging the latter premise, and arguing that IHO Abraham erred in failing to award $750 per day for the 2021–22 school year and $810 per day for the 2022–23 school year. Plaintiffs thus argued that they were entitled to $216,390. The DOE cross-appealed, challenging the premise that plaintiffs were entitled to payment irrespective of A.F.'s physical attendance. On July 14, 2025, state review officer ("SRO") Justyn P. Bates dismissed plaintiffs' appeal and sustained the DOE's cross-appeal. The SRO held that the DOE was required to reimburse transportation costs only for the days A.F. physically attended iBrain and used specialized transportation services. Because plaintiffs had not produced evidence of the number of days A.F. had physically attended iBrain during the years in question, his order did not contain a bottom-line calculation of the sum plaintiffs were due.

Plaintiffs now challenge SRO Bates' decision, again seeking $216,390 for specialized transportation costs. And the parties have each moved for summary judgment on plaintiffs'

claim based on 42 U.S.C. § 1983. For the reasons that follow, the Court affirms SRO Bates' decision in full and grants summary judgment in favor of the DOE on the § 1983 claim.

## I. Background[1]

The Court assumes familiarity with this case, which is set out in substantial detail in *Frias I*, 2024 WL 4635315, at *1–2. The following summary is limited to the facts necessary for resolution of the discrete issues presented here.

### A. A.F.'s Relevant Educational History

A.F. is a child "with a disability" as defined under the IDEA. Dkt. 60 ("Pls. 56.1") ¶ 2; *see also* 20 U.S.C. § 1401(3)(A)(i) (listing covered disabilities). In her early childhood, A.F. was diagnosed with Pierre Robin Syndrome, severe intellectual disabilities, autism spectrum disorder, asthma, and epilepsy. Pls. 56.1 ¶ 5. A.F.'s disabilities cause "global delays impacting all areas of development, including cognition, communication, social-emotional, physical, and academic functioning." *Id.* ¶ 6. She has a minimal attention span, is not toilet-trained, and requires adult assistance in all areas of daily living. *Id.* ¶ 7.

On April 5, 2022, after growing dissatisfied with the Department's educational placement for A.F., Frias unilaterally enrolled A.F. at iBrain for the remainder of the 2021–22 school year and the entirety of the 2022–23 school year. *Id.* ¶¶ 9–11, 13. In connection with that enrollment,

---

[1] This factual account is drawn from Plaintiffs' 56.1 Statement in Support of Summary Judgment, Dkt. 60 ("Pls. 56.1"); Plaintiffs' Opposition to Defendants' 56.1 Statement in Support of Summary Judgment, Dkt. 74 ("Pls. 56.1 Opp."); Defendants' 56.1 Statement in Support of Summary Judgment, Dkt. 70 ("Defs. 56.1"); and Defendants' Opposition to Plaintiffs' 56.1 Statement, Dkt. 71 ("Defs. 56.1 Opp."). Unless otherwise noted, a standalone citation to a 56.1 Statement denotes that this Court has deemed the underlying factual allegation undisputed. Any citations to a party's 56.1 Statement incorporates by reference the documents cited therein. Where relevant, however, the Court may cite directly to underlying documents. For exhibits and briefs with both internal and Bates-stamped numbering, the Court cites the Bates-stamped page numbers.

Frias contracted Sisters Travel and Transportation, LLC ("Sisters") to obtain specialized transportation services for A.F. from her home to iBrain.[2] *Id.* ¶¶ 13–16, 38. On June 7, 2022, and June 16, 2022, Frias executed agreements with Sisters governing the provision of this specialized transportation (the "Agreement"). Dkts. 63-7, 63-9. The Agreement stated that "each AM TRIP and PM TRIP will be billed as a flat rate of $375 for the 2021-2022 school year and $405 for the 2022-2023 school year, whether A.F. used the services or not." Defs. 56.1 ¶ 21 (cleaned up).

### B. Procedural History

#### 1. Prior Administrative Proceedings

On November 17, 2022, plaintiffs initiated a Due Process Complaint ("DPC") against the Department alleging that (a) the DOE failed to offer A.F. a free and appropriate public education

[2] Defendants address the relationship between plaintiffs' counsel (Patrick Donohue), iBrain, and Sisters, contending that such may reflect potential collusion or abuse and may be designed to maximize reimbursement in a manner inconsistent with the public interest. *See* Dkt. 68 ("Defs. Mem. & Opp'n") at 12–15; Defs. 56.1 ¶¶ 1–20. Defendants state that (a) Donohue founded both the law firm representing plaintiffs and iBrain, *id.* ¶¶ 1–2; (b) Donohue's wife is the director of Sisters, *id.* ¶ 3; (c) Sisters is registered to Donohue's home address, *id.* ¶ 4; (d) Sisters subcontracts transportation services to a third-party company called Sinai I Inc. ("Sinai"), *id.* ¶¶ 13, 16; (e) neither iBrain nor Sisters maintains records tracking students' daily use of transportation services, *id.* ¶¶ 8–10; and (f) invoices produced in separate state-court litigation ostensibly indicate that Sisters paid substantially less to subcontractors than the amounts it seeks to recover from the DOE under its transportation contracts, *id.* ¶¶ 17–20; Dkt. 69 ("Tambone Decl."), Ex. A (attaching the complaint in a state-court dispute between Sisters and Sinai), Ex. C (attaching the invoices between Sisters and Sinai). Plaintiffs dispute some, but not all, of these factual assertions. *See* Dkt. 74 ("Pls. 56.1 Opp."). In some instances, plaintiffs cite record evidence in support of their denials; in others, they object that the asserted facts are immaterial to the issues at hand. *Compare id.* ¶¶ 14–15 (not citing evidence controverting defendants' assertions), *with id.* ¶¶ 17–20 (citing such evidence). For purposes of these motions, the Court treats as undisputed defendants' properly supported factual assertions that plaintiffs have failed to controvert with record evidence in accordance with the local rules. *See* Local Civ. R. 56.1(c), (d); *see also Frias I*, No. 24 Civ. 1767 (PAE), 2024 WL 4635315, at *2 n.1 (S.D.N.Y. Oct. 30, 2024) ("The Court cannot see any apparent justification for redacting this information about A.F.'s specialized transportation services, given the nature of the dispute at hand and the DOE's legitimate concerns about waste, fraud, and abuse." (citation omitted)).

("FAPE"), (b) unilateral placement at iBrain was appropriate, and (c) equitable considerations favored full reimbursement for A.F.'s educational program, including specialized transportation costs. *Id.* ¶ 17; *Frias I*, 2024 WL 4635315, at *2. On January 11, 2023, IHO Brescia was appointed by the DOE to adjudicate the matter. Pls. 56.1 ¶ 20.

On May 30, 2023, IHO Brescia issued a FOFD that "ordered the DOE to fund the costs of tuition and related services at [iBrain], as well as the costs of [] transportation for A.F. between home and [iBrain], from April 5 through June 24, 2022, and for the 2022-2023 12-month school year." *Id.* ¶ 32. In reaching the decision, IHO Brescia applied the familiar *Burlington/Carter* framework, used by courts to assess whether the DOE is required to reimburse parents for private school–related costs under the IDEA.[3] *Id.* ¶¶ 28–29, 31. Under it, parents who have unilaterally placed a child in private school are "entitled to reimbursement if (1) the school district's proposed placement violated the IDEA, (2) the parents' alternative private placement is appropriate to meet the child's needs, and (3) equitable considerations favor reimbursement." *See E.M. v. N.Y.C. Dep't of Educ.*, 758 F.3d 442, 451–55 (2d Cir. 2014). IHO Brescia found that Frias met all three prongs of the *Burlington/Carter* framework. *Id.* ¶¶ 28–29, 31.[4]

---

[3] *See Sch. Comm. of the Town of Burlington v. Dep't of Educ.*, 471 U.S. 359, 369 (1985) (recognizing that parents challenging a State's individualized educational plan ("IEP") may also unilaterally withdraw their child from the public school district, and obtain "reimburse[ment] . . . for their expenditures on private special education for [that] child if [a] court ultimately determines that such placement, rather than a proposed IEP, is proper under the Act"); *Florence Cnty. Sch. Dist. Four v. Carter ex rel. Carter*, 510 U.S. 7, 15 (1993) (under *Burlington*, parents who "unilaterally change their child's placement during the pendency of review proceedings, without the consent of state or local school officials, do so at their own financial risk," and "are entitled to reimbursement only if a federal court concludes both that the public placement violated IDEA and that the private school placement was proper under the Act" (cleaned up)).

[4] During the administrative proceedings, defendants conceded that they have not met their burden under the first prong of the *Burlington/Carter* test. Pls. 56.1 ¶¶ 25, 28. As to the

IHO Brescia, in rendering her decision, addressed the specific issue of reimbursement for specialized transportation costs:

> As to reimbursement for specialized transportation for A.F.: (a) there can be no dispute that A.F. needs specialized transportation to and from school; (b) given A.F.'s safety and mobility challenges, specialized transportation to enable her to access an educational program is costly; and (c) the evidence consists of a transportation contract that obligates A.F.'s parent to pay for transportation expenses. As per a number of SRO decisions, these factors constitute sufficient evidence to warrant public funding for transportation where the school district has failed to offer or provide specialized transportation to a student.

*Id.* ¶ 33.

The Department did not appeal IHO Brescia's FOFD to an SRO within the 25-day period prescribed under New York state law. *See Frias I*, 2024 WL 4635315, at *2 (citing N.Y. Comp. Codes R. & Regs. tit. 8, § 279.2). As a result, IHO Brescia's FOFD order reimbursement of transportation expenses became final. *Id.*

### 2. The Court's Prior Summary Judgment Decision ("*Frias I*")

On March 7, 2024, plaintiffs filed a complaint, seeking enforcement of IHO Brescia's FOFD. Dkt. 1.

On June 12, 2024, plaintiffs filed a motion for summary judgment, Dkt. 20, and a memorandum of law in support, Dkt. 21. On August 6, 2024, defendants filed a cross-motion for summary judgment, Dkt. 32, and a memorandum of law in support, Dkt. 33. On August 30, 2024, plaintiffs filed a memorandum of law in further support and an opposition to defendants' motion. Dkt. 35. On September 6, 2024, defendants filed a memorandum of law in further support. Dkt. 37.

---

remaining two prongs, IHO Brescia conducted an evidentiary hearing at which the parties presented testimony, documentary evidence, exhibits, and argument, and concluded that both prongs favored plaintiffs. *Id.* ¶¶ 23–31.

On October 30, 2024, the Court denied, without prejudice, both parties' cross-motions for summary judgment. It remanded to the IHO for clarification as to the measure of transportation reimbursement contemplated by her FOFD. *Frias I*, 2024 WL 4635315, at *1. The Court found the FOFD's text, which "order[ed] the DOE to fund specialized transportation services for A.F. between home and iBrain," "unclear as to the DOE's reimbursement responsibilities." *Id.* at *3; *see also id.* ("[The FOFD] is open to plausible, competing interpretations. In particular, transportation services 'between home and iBrain' could mean, as Frias argues, that the DOE is responsible for paying all costs incurred under the Agreement, regardless of whether A.F. actually used the services provided . . . . Or the phrase may mean, as the DOE contends, that its funding obligations are limited to when A.F. actually used the transportation services." (cleaned up)). In remanding, the Court stated that the "IHO may wish to explore whether the terms of the Agreement are unnecessarily unfavorable to the DOE, and whether additional, uniform language could assist parties and courts alike in carrying out administrative directives." *Id.* at *3. The Court directed that such review be completed within two months. *Id.*

**3. Administrative Proceedings Following Remand**

On December 3, 2024, IHO Abraham was assigned to resolve the issue of how much the DOE was obliged to reimburse plaintiffs for transportation services. Pls. 56.1 ¶ 35. On January 21, 2025, IHO Abraham held a status conference, and, on February 24, 2025, a hearing. *Id.* ¶ 36. At the hearing, plaintiffs made opening and closing statements, offered 12 exhibits into evidence, and presented a sole witness—parent Frias. *Id.* ¶ 37; Defs. 56.1 ¶ 5. Plaintiffs offered the same exhibits earlier submitted to IHO Brescia. The DOE waived its opening statement, offered eight

exhibits into evidence, did not present any witnesses, cross-examined plaintiff Frias, and made a closing statement.[5] Pls. 56.1 ¶ 37.

During this hearing, plaintiffs' counsel represented that they were "seeking payment for transportation costs charged by Sisters [] of $19,500 for the 2021-2022 school year and $88,695 for the 2022-2023 school year, for a total amount of $108,195." Defs. 56.1 ¶ 22. Plaintiffs based those amounts on their Agreement with Sisters, which provided that, for each school day, plaintiffs "will be billed as a flat rate of' [sic] $375 for the 2021-2022 school year and $405 for the 2022-2023 school year, whether A.F. used the [transportation] services or not." *Id.* ¶ 21. Applying those daily rates to the 52 school days during the 2021–22 school year and the 219 school days during the 2022–23 school year, plaintiffs argued the total reimbursement to be $108,195. *Id.* ¶¶ 24–25. IHO Abraham pressed plaintiffs' counsel multiple times as to the precise amount she sought. *See* Dkt. 63-27 ("Feb. 24, 2025 Tr.") at 23–24 ("IHO ABRAHAM: Okay. And so, 52 total days and so, obviously 375 times 52 equals $19,500. Is that correct?" "MS. EASTWOOD: I went to law school because there was no math requirement. Don't ask me.").

Ultimately, plaintiffs' counsel confirmed she was seeking a total transportation award of $108,195:

> IHO ABRAHAM: Okay. Okay. Alright. So, Ms. Eastwood, essentially what parent is -- the relief that parent is requesting today, is the $88,695 plus $19,500 for a total of 100 -- [inaudible] calculator and I'll redo the math. $108 -- I'm sorry, $108,195 and that's to be paid by the transportation company for the '21-'22, '22-'23 school year beginning 4/5/22 to 6/30/22, and then running the entire next school year 7/1/22, 6/30/23. Is that correct?

[5] Three of the plaintiffs' and Department's exhibits were identical. Although plaintiffs' exhibits in the remand proceedings consisted of the same documentary evidence introduced during the prior hearing, the Department did not resubmit the 15 exhibits it had introduced at the prior hearing. Instead, it offered eight exhibits (three of which were identical to plaintiffs' exhibits).

MS. EASTWOOD: Everything is correct except I haven't done the math on what you -- your 108.

IHO ABRAHAM: Okay.

MS. EASTWOOD: So, I --

IHO ABRAHAM: Do me a favor --

MS. EASTWOOD: I'll take your word for it though.

IHO ABRAHAM: Well, that's very sweet of you, but I don't want you to do that.

MS. EASTWOOD: Okay.

IHO ABRAHAM: What you do is take out your calculator --

MS. EASTWOOD: Okay. I just did, and it is correct.

IHO ABRAHAM: It is correct, $108,195?

MS. EASTWOOD: Yes.

Defs. 56.1 ¶ 26.

On February 26, 2025, IHO Abraham issued a FOFD. *See* Dkt. 63-1. IHO Abraham found that the DOE "failed to provide transportation during the 2021-2022 and 2022-2023 school years, and that the [p]laintiff was compelled to enter into binding transportation contracts with [Sisters]." Pls. 56.1 ¶ 38. As to the sum due for this specialized transportation, IHO Abraham found the Department "responsible for funding transportation costs based on the number of school days in the iBrain calendar, not on the [s]tudent's attendance," and rejected the DOE's argument that reimbursement should be limited to the days she actually attended school. *Id.* ¶ 39. Finding that "requiring the [p]laintiff to pay for transportation services for any day A.F. was absent would be inequitable," *id.* ¶ 41, IHO Abraham "ordered the DOE to reimburse transportation in the amount of $19,500.00 for the 2021-2022 school year (52 days at $375/day) and $88,695.00 for the 2022-2023 school year (219 days at $405/day)," *id.* ¶ 42.

Plaintiffs then appealed IHO Abraham's FOFD. *Id.* ¶ 43. Reversing a position they had taken earlier, they sought "clarification" that the "daily fee" used to tabulate the reimbursement should have consisted of a "per-trip fee," entitling plaintiffs to reimbursement for "two trips per day—one in the morning to school and the other in the afternoon to home." *Id.* ¶ 45.[6] Based on that calculation, plaintiffs argued that the Agreement entitled them to reimbursement of $39,000 for the 2021–22 school year and $177,390 for the 2022–23 school year, double the sum IHO Abraham awarded in the FOFD. *Id.* The DOE cross-appealed. *Id.* ¶ 43. It argued that the reimbursement for transportation services should be limited to the days A.F. actually used Sisters's services, not the days when A.F. was merely scheduled to attend school.

On July 14, 2025, SRO Bates dismissed plaintiffs' appeal and sustained the DOE's cross-appeal. *Id.* ¶ 49.

SRO Bates observed that plaintiffs' argument that the rates stated in the Agreement were meant to capture the cost of a "trip" to or from school, rather than the daily round trip, was a new argument, pressed for the first time on appeal. Dkt. 63-1 at 8–20 ("SRO Dec."), at 6. SRO Bates rejected that argument. He found that IHO Abraham had correctly determined that the DOE was required to reimburse plaintiffs at the rates of $375 and $405 per day during the respective school years. Also siding with the DOE, SRO Bates held that IHO Abraham erred in requiring the DOE to fund transportation for all 52 school days during the 2021–22 school year and all 219 school days during the 2022–23 school year. Reimbursement, he held, was required only for the dates of A.F.'s actual attendance. *Id.* at 13.

---

[6] The DOE faults plaintiffs for suggesting that IHO Abraham was responsible for conflating a "daily fee" with a "per-trip fee." It notes that, before the IHO, plaintiffs' counsel "specifically and repeatedly told IHO Abraham that [p]laintiff was seeking a daily fee." Dkt. 71 ("Defs. 56.1 Opp.") ¶ 45.

SRO Bates further observed that under New York state regulations, nonpublic schools are required to maintain a record of each pupil's presence, absence, tardiness and early departure. *Id.* at 10. iBrain, however, had not done so, reinforcing this Court's concern, which it had asked be explored on remand, that the contract terms imposed by Sisters Travel were unfair to the DOE. *Id.* at 10–11.

SRO Bates concluded:

> Based on the evidence in this hearing record, judicial notice of litigation involving Sisters Travel and a review of relevant case law, I will order the district to fund transportation services provided by Sisters Travel on those days during the 2021-22 school year that the student physically attended iBrain at the daily rate as sought by the parents attorney upon the repeated questioning of the IHO, namely $375 per day. For the 2022-23 school year the district is similarly required to fund the student's transportation at $405 per day for those days that the student attended iBrain in person.

*Id.* at 13.

Accordingly, SRO Bates modified IHO Abraham's FOFD to require the DOE to reimburse Plaintiffs for specialized transportation only for the days on which A.F. actually attended iBrain between April 5 and June 24, 2022, and during the 2022–23 school year. Pls. 56.1 ¶ 48.

### 4. Procedural History of This Action

On December 13, 2025, plaintiffs filed a motion for summary judgment. They sought to vacate SRO Bates' decision, to affirm IHO Abraham's FOFD insofar as it imposed an obligation to reimburse plaintiffs for transportation services for every day of the school year, and to modify the FOFD to provide for reimbursement at the contract rates for two, rather than one, trip per day. Dkt. 59. That same day, plaintiffs filed a Rule 56.1 statement. Dkt. 60 ("Pls. 56.1"). On December 15, 2025, plaintiffs filed a memorandum of law in support of their summary judgment motion, Dkt. 61 ("Pls. Mem."), and on December 17, 2025, filed a sealed copy of the

administrative record, Dkt. 62. On January 23, 2026, the DOE cross-moved for summary judgment, Dkt. 67, attaching a memorandum of law in support and in opposition to Frias' motion, Dkt. 68 ("Defs. Mem. & Opp'n"); a declaration from the DOE's counsel with accompanying exhibits, Dkt. 69 ("Tambone Decl."); defendants' Rule 56.1 statement, Dkt. 70 ("Defs. 56.1"); and defendants' response to plaintiffs' 56.1 Statement, Dkt. 71 ("Defs. 56.1 Opp."). On February 6, 2026, plaintiffs replied, Dkt. 73 ("Pls. Reply"), and responded to defendants' 56.1 Statement, Dkt. 74 ("Pls. 56.1 Opp."). On February 20, 2026, defendants replied. Dkt. 75 ("Defs. Reply").

## II. Applicable Legal Standard

### A. IDEA

The IDEA offers federal funds to states in exchange for a commitment to provide a FAPE to all children with disabilities. 20 U.S.C. § 1412(a)(1)(A); *see also Endrew F. ex rel. Joseph F. v. Douglas Cnty. Sch Dist. RE-1*, 580 U.S. 386, 399 (2017). A FAPE should "emphasize[] special education and related services designed to meet the unique needs" of a child with a disability and "prepare" the child "for further education, employment, and independent living." 20 U.S.C. § 1400(d)(1)(A).

To accomplish that purpose, the local educational agency must develop an IEP for each child that "sets out the child's present educational performance, establishes annual and short-term objectives for improvements in that performance, and describes the specially designed instruction and services that will enable the child to meet those objectives." *Honig v. Doe*, 484 U.S. 305, 311 (1988); *see* 20 U.S.C. § 1414(d)(1)(A); *T.Y. v. N.Y.C. Dep't of Educ.*, 584 F.3d 412, 415 (2d Cir. 2009). The IEP must be "reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances." *Endrew*, 580 U.S. at 399. It must be calculated to provide an "appropriate education, not one that provides everything that might be

thought desirable by loving parents." *Navarro Carritto v. N.Y.C. Dep't of Educ.*, No. 21 Civ. 2639, 2023 WL 3162127, at *3 (2d Cir. May 1, 2023) (quoting *Walczak v. Fla. Union Free Sch. Dist*, 142 F.3d 119, 132 (2d Cir. 1998)).

When a parent believes that the State has failed to offer her child a FAPE, the parent may file a due process complaint and attend a hearing before an IHO. 20 U.S.C. § 1415(b)(6); N.Y. Educ. Law § 4404(1). Such a complaint initiates an "administrative challenge unrelated to the concept of constitutional due process." *R.E. v. N.Y.C. Dep't of Educ.*, 694 F.3d 167, 175 (2d Cir. 2012). If the parent's concerns are not resolved at a "[p]reliminary meeting," 20 U.S.C. § 1415(f)(1)(B)(i), the matter proceeds to a hearing before the IHO, *id.* § 1415(f)(1)(A); *see also id.* § 1415(f)(3)(A)(i), who must "determin[e] . . . whether the child received a [FAPE]," *id.* § 1415(f)(3)(E)(i); *see also* N.Y. Educ. Law § 4404(1)(a). The IHO's decision is appealable by either party to an SRO, who must "conduct an impartial review" of the IHO's "findings and decision." 20 U.S.C. § 1415(g); N.Y. Educ. Law § 4404(2). "Any party aggrieved by" the SRO's decision "ha[s] the right" to seek judicial review by filing a civil action in state or federal court. 20 U.S.C. § 1415(i)(2)(A); *see also* N.Y. Educ. Law § 4404(3)(a).

**B. Standard of Review for IDEA Summary Judgment**

Summary judgment in the context of an IDEA case "involves more than looking into disputed issues of fact; rather, it is a pragmatic procedural mechanism for reviewing administrative decisions." *R.E.*, 694 F.3d at 184 (quoting *A.C. ex rel. M.C. v. Bd. of Educ. of the Chappaqua Cent. Sch. Dist.*, 553 F.3d 165, 171 (2d Cir. 2009)). Although the "district court must base its decision on the preponderance of the evidence," it ultimately must "give due weight to the administrative proceedings, mindful that the judiciary generally lacks the specialized knowledge and experience necessary to resolve persistent and difficult questions of educational policy," *A.C.*, 553 F.3d at 171 (cleaned up).

When the decisions of an IHO and an SRO conflict, the Court should generally defer to the SRO's decision as the "final decision of the state authorities," *R.E.*, 694 F.3d at 189 (quoting *A.C.*, 553 F.3d at 171), particularly "when the state officer's review has been thorough and careful," *id.* at 184 (cleaned up). But where "the district court appropriately concludes that the SRO's determinations are insufficiently reasoned to merit that deference, and in particular where the SRO rejects a more thorough and carefully considered decision of an IHO, it is entirely appropriate for the court, having in its turn found the SRO's conclusions unpersuasive even after appropriate deference is paid, to consider the IHO's analysis, which is also informed by greater educational expertise than that of judges." *Id.* at 189 (citing *M.H. v. New York City Dep't of Educ.*, 685 F.3d 217, 246 (2d Cir. 2012)). "[T]he substantial deference that the IDEA requires for matters of educational policy," however, "is inapplicable to the equitable balancing called for at the third step of the *Burlington/Carter* test." *Ferreira v. Aviles-Ramos,* 120 F.4th 323, 332 (2d Cir. 2024).

## III. Discussion

### A. SRO Bates' Decision Should be Affirmed Under *Burlington/Carter*

After years of litigation, including multiple state administrative rulings and this Court's prior summary judgment decision (*Frias I*), the parties' dispute has narrowed to a single issue: the appropriate reimbursement to which plaintiffs are entitled for A.F.'s specialized transportation services provided by Sisters. The third prong of *Burlington-Carter* requires the Court to resolve this issue based on its "consideration of the equities." *A.P. v. N.Y.C. Dep't of Educ.*, 2024 WL 763386, at *2 (2d Cir. Feb. 26, 2024) (summary order). Under SRO Bates' July 14, 2025 decision, plaintiffs have been awarded reimbursement for specialized transportation by Sisters at the rate of $375 per day for the 2021–22 school year and at the rate of

$405 per day for the 2022–23 school year for all of the days she physically attended iBrain. *See* SRO Dec. at 12–13.

Plaintiffs argue that SRO Bates erred in two respects in so measuring that award. First, plaintiffs argue, the SRO was wrong to find that plaintiffs are entitled to reimbursement only for those days A.F. physically attended iBrain as opposed to every day comprising the school year. Second, plaintiffs argue, the SRO was wrong that the transportation rates in the Agreement reflected a "per diem" rate rather than a "per trip" rate. Pls' Mem. at 9. Because each travel day entailed trips to and from the school, she contends that the proper transportation reimbursement amount is $216,390, double the amount calculated by the IHO, who (as plaintiffs requested) awarded plaintiffs reimbursement for every day during the school year, but on a "per diem" basis. *Id.* at 20. The DOE counters that the SRO's findings are entitled to deference. Ds' Mem. & Opp'n. at 9–10. And even if the Court were to resolve the issue *de novo*, the equities substantially favor SRO Bates' decision, which rigorously adhered the Court's remand mandate and reflected a close review of the administrative record.

The Department is correct. The Court has carefully considered the record *de novo* and independently balanced the equities. On that basis, the Court firmly agrees with the SRO's conclusions that the DOE is required to reimburse plaintiffs for specialized transportation by Sisters (1) only for the days that A.F. physically attended iBrain and (2) at the rate of $375 per day for the 2021–22 school year and at the rate of $405 per day for the 2022–23 school year (*i.e.*, on a per diem basis).[7]

---

[7] This present record does not enable tabulation of the amount due plaintiffs under these parameters. Notwithstanding the Court's directive to clarify the record, the record appears regrettably sparse as to the number of days A.F. actually attended school during the school years at issue. *See* Feb. 24, 2025 Tr. at 49–50. Plaintiffs' counsel did not offer attendance records or permit inquiry of Frias by the Department on this clearly relevant factual point. *Id.* at 37

The Court incorporates by reference the SRO's cogent reasoning. The Court adds only the following.

As to the issue of the days for which reimbursement is warranted, the SRO's finding that transportation reimbursement is warranted only for days when A.F. physically attended iBrain soundly applied the principle of IDEA § 1412(a)(10)(C)(ii) that the Department must "reimburse the parents for *the cost of*" private school enrollment. 20 U.S.C. § 1412(a)(10)(C)(ii) (emphasis added). On remand, the Court had directed the IHO and SRO to consider how the term "cost" applied in this context. *Frias I*, 2024 WL 4635215, at *3. SEO Bates concluded that the "cost" referred only to those days when the child was actually transported "between home and iBrain," days which, as plaintiffs conceded, reflected only a subset of the days constituting the school years at issue. *See* Feb. 24, 2025 Tr. at 23–24.

His holding accorded with those of a growing number of sister courts in this District applying the term "cost" in the same context. In cases likewise involving reimbursement bids involving transportation to and from iBrain, such courts have found the DOE obliged to reimburse only for transportation services "actually provided" when such is expressly stated in the text of the FOFD (which, as modified by SRO Bates, is the case here). *See, e.g.*, *Donohue v. Banks*, No. 22 Civ. 8998, 2023 WL 6386014, at *12 (S.D.N.Y. Sept. 30, 2023) (limiting the DOE's reimbursement obligations to transportation services "actually provided" to the student where such was identified in the FOFD); *Araujo v. New York City Dep't of Educ.*, No. 20 Civ.

---

(objecting to question from the DOE's counsel on cross-examination as to A.F.'s attendance). Separately problematic, plaintiffs seek reimbursement as measured by the Agreement for services beginning from April 2022. It is not clear why the Agreement would govern reimbursement for that period, given Frias's acknowledgment that she first executed the Agreement in July. *See* Feb. 24, 2025 Tr. at 30. These calculative issues will be required to be on remand.

7032, 2023 WL 5097982, at *2, 5 (S.D.N.Y. Aug. 9, 2023) (holding that the FOFD directing the DOE to fund the costs of the student's "transportation services to and from the private program that were *actually provided* to the student" required the plaintiffs to "provide evidence that [the student] physically traveled to and/or from iBRAIN via an approved transportation service in order to seek reimbursement" (emphasis added)); *Davis v. Banks*, No. 22 Civ. 8184, 2023 WL 5917659, at *3 (S.D.N.Y. Sept. 11, 2023) (rejecting plaintiffs' claim that "services . . . actually provided" does not refer to rides actually taken, as such "strains the relevant language beyond its breaking point and renders the phrase 'actually provided' superfluous").

The SRO's holding also respects equitable considerations presented by the Agreement that plaintiffs here entered into with iBrain's transportation affiliate, Sisters. As this Court and others have recognized, ordering the DOE to pay large sums to iBrain's affiliate for days when its transportation services went unused presents a substantial burden on the DOE and the public fisc. And the bid to use the Agreement to obtain reimbursement here presents an obvious equitable concern with respect to parents of iBrain students. Such parents enter into such agreements incident to their child's enrollment at iBrain. They understandably seek reimbursement from the DOE based on the Agreement, which, if read as plaintiffs do, exposes them to contractual liability to Sisters even for days when the child stays home. But plaintiffs have not adduced evidence that, where the DOE is upheld in denying such reimbursement, iBrain's affiliate ever in fact requires the parents to pay for transportation on days of non-attendance. In this context, the Agreement serves as a lever solely to extract money from the DOE. In this context, it is eminently reasonable, applying the term "cost" in the context of applications for reimbursement under the IDEA, to treat such as limited to those days when the student actually attended iBrain. *See, e.g.*, *Moonsammy v. Banks*, 2025 WL 733254 (S.D.N.Y.

Mar. 7, 2025), at *7 (declining to award additional funding in reimbursement where there was "no reliable record evidence" supporting claim for additional services); *Davis*, 2023 WL 5917659, at *5 n.7 ("The DOE hints at the possibility of such waste, fraud, and abuse here, noting that Sisters's director is married to the founder of both iBrain and the law firm representing Plaintiffs and that Sisters is registered to that founder's home address."); *Justine Ferriera v. N.Y. C. Dep't. of Educ.*, 19 Civ. 2937 (S.D.N.Y. Mar. 2, 2020), at 1 n.1 (same). Requiring reimbursement for transportation services here only for the days on which A.F. actually used those services is a sound application of the term "cost" and accords with the equitable considerations of *Burlington/Carter* prong three.

As to the daily rates, the SRO convincingly reasoned, and certainly did not err in concluding, that the specialized transportation by Sisters was to be awarded at the rate of $375 and $405 per day, rather than per trip, for the 2021–22 and 2022–23 school year, respectively. (And the IHO, consistent with the scale of relief the parents then sought, had used the same calculation.) The text of the Agreement supports this reading.

As to the 2021–22 year, in a section titled "FEES and PAYMENT FOR SERVICES," the Agreement specified:

> The PARTIES agree each AM TRIP and PM TRIP will be billed as a flat rate of $375.00 ($320.00 for vehicle and driver+ $55.00 for transportation paraprofessional), hereinafter referred to as "FEES." PROVIDER will bill for FEES on a monthly basis.

And, as to the 2022–23 year, the Agreement, in an identically-titled section, specified:

> The PARTIES agree each AM TRIP and PM TRIP will be billed as a flat rate of $405.00 ($345.00 for vehicle and driver+ $60.00 for transportation paraprofessional), hereinafter referred to as "FEES." PROVIDER will bill for FEES on a monthly basis.

Dkt. 63-7 at 5; Dkt. 63-9 at 6.

The use of the term "flat rate" reasonably supports interpreting the specified rate—$375 or $405—to refer to the cost collectively of the morning ("AM TRIP") *and* afternoon ("PM TRIP") legs. That reading is supported by the placement of the word "each" immediately before the combined expression "AM TRIP and PM TRIP." "[E]ach" thus appears to modify the trips in combination. In contrast, had the Agreement read "each AM TRIP and each PM TRIP," such would have lent support to plaintiffs' higher calculation.

And the representations offered by plaintiffs' counsel before the IHO supported the SRO's calculation. Counsel represented that "the driver and vehicle were $320 a day and the paraprofessional was $55 a day" for the 2021–22 school year. *See* Feb. 24, 2025 Tr. at 22. Counsel stated that, for the 2022–23 school year, the cost of a driver "went up $25" and a paraprofessional went up "$5," for "a total of $405 per day for transportation." *Id.* at 26–27. IHO Abraham proceeded to review his "math" with the parties, treating these rates "per day" and multiplying them by the number of days he viewed as compensable. *See, e.g.*, *id.* at 21–29. Plaintiffs' counsel then independently confirmed the resulting amounts for the 2021–22 year ($19,500), the 2022–23 year ($88,695), and the years combined ($108,195). *See id.* at 25, 27, 29. At no point did plaintiffs' counsel represent or argue that the rate provided were to be evaluated "per trip" rather than per day, let alone claim that the parents were out of pocket for such rates. Moreover, the per day rates—$375 and $405—align with the records supplied by the DOE as having been charged by Sisters' subcontractors in other cases. *See, e.g.*, Dkt. 69-3 (invoices from Sisters' subcontractor, reflecting charges to Sisters of approximately $200 per round-trip in most instances and $120 per round-trip in others). There is no evidentiary basis for plaintiffs' belated attempt to secure double reimbursement. *See* 20 U.S.C. 1415(i)(2)(C)(iii) (court-ordered relief must be "bas[ed] . . . on the preponderance of the evidence"); *see also*,

*e.g.*, *Mr. & Mrs. A. ex ret D.A. v. N. Y.C. Dep't of Educ.*, 769 F. Supp. 2d 403, 411 (S.D.N.Y. 2011) (same); *A.R. ex rel. F.P. v. N.Y.C. Dep't of Educ.*, No. 12 Civ. 4493, 2013 WL 5312537, *2 (S.D.N.Y. Sept. 23, 2013) (same).

Plaintiffs make two counterarguments. Neither is persuasive.

First, plaintiffs contend that the reassignment on remand from IHO Brescia to IHO Abrahams undermined the integrity of the administrative proceedings. Pls' Mem. 23. The record is silent as to why IHO Brescia was not tasked with the interpreting her May 30, 2023 FOFD on remand.[8] As SRO Bates observed, it is unclear whether IHO Brescia was unavailable, refused to take on matter, or whether some other complication impeded her service. SRO Dec. at 7. Regardless, that argument is not a basis for relief. As plaintiffs concede they received a "favorable" FOFD from IHO Abraham on the central issue at hand: whether they were entitled to transportation reimbursement for the days when A.F. stayed home. Pls' Mem. at 23. And, critically, plaintiffs, while taking issue with the SRO's analysis, have not identified any irregularity associated with the reassignment. *See id.* (stating that the reassignment gave rise to "unnecessary procedural complexity" but not identifying any irregularity). Plaintiffs do not argue, for example, that the successor IHO, Abrahams, misapplied a legal standard, denied plaintiffs procedural safeguards, or was biased or unfair. And, because plaintiffs introduced identical exhibits in the proceedings before the two IHOs, there is no basis to conclude that IHO Abrahams was not privy to any of the record before IHO Brescia. *Compare* 2023 FOFD, *with* Feb. 24, 2025 Tr. at 14–16. There is, in sum, no basis to challenge the integrity of the

---

[8] As SRO Bates observed, given the reassignment, IHO Abraham was put in the "unenviable position of trying to determine what IHO [Brescia] may have been thinking, which was a near impossible task without the benefit of her participation." 2025 SRO Decision at 7 n.7.

administrative proceedings before the successor IHO. And plaintiffs' seizing on this is, of course, a mismatch for the claims of error, which are directed to the rulings by the SRO.

Second, Frias argues that SRO Bates departed from the Court's remand mandate, and was thereby arbitrary and capricious. Pls' Mem. at 20–21, 24. That argument is frivolous. Quite to the contrary, SRO Bates's decision reflected close attention to the remand mandate and faithfully applied the Court's guidance to the record. SRO Bates recognized "the District Court's intent on remand," and limited his analysis to issues the "District Court urged the parties to explore." SRO Dec. at 7, 11. To the extent plaintiffs fault SRO Bates for raising concerns about the close relationship between iBrain and Sisters, and whether such resulted in contract terms that were "unfavorable to the district," *id.* at 10–11, this was an area the Court had invited the parties to explore on remand. *See Frias I*, 2024 WL 4635315, at *3 ("The IHO may wish to explore whether the terms of the Agreement are unnecessarily unfavorable to the DOE"). And SRO Bates' election of "actual attendance" as the proper metric of the reimbursement was squarely within his remit. SRO Dec. at 10. The Court in remanding had recognized this as a plausible interpretation to be considered. It observed that, "if a student does not travel to and from school, it is difficult to say whether any transportation services—let alone transportation services 'between home and iBrain'—were provided." *Frias I*, 2024 WL 4635315, at *3. SRO Bates's interpretation was all the more reasonable insofar as he noted that plaintiffs' contrary view was in tension with the requirement, under New York law, that iBrain maintain a "record" of each pupil's "presence, absence, tardiness and early departure." *See* SRO Dec. at 10 (citing 8 N.Y. C.R.R. § 104.1(c)). In sum, far from plaintiffs' ungracious swipe, SRO Bates did his job with care and professionalism. He carefully considered each argument made by plaintiffs before arriving at a decision grounded in the "hearing record, judicial notice of litigation involving

Sisters Travel and a review of relevant case law," as to which he cited numerous administrative decisions arising from analogous circumstances. *Id.* at 12–13. In short, the SRO decision was anything but arbitrary and capricious. *See, e.g.*, *Avaras v. Clarkstown Cent. Sch. Dist.*, No. 18 Civ. 6964, 2019 WL 4600870, at *11 (S.D.N.Y. Sept. 21, 2019) (finding that because SRO Bates addressed plaintiffs' arguments and proffered his reasoning for rejecting it, the court would not disturb his determination as arbitrary and capricious); *B.C. ex rel. B.M. v. Pine Plains Cent. Sch. Dist.*, 971 F. Supp. 2d 356, 367 (S.D.N.Y. 2013) (same as to different SRO who cited to relevant case law and numerous on-point administrative decisions).

The record evidence thus emphatically supports—and does not justify disturbing—SRO Bates' decision. The Court so holds after giving full solicitude to plaintiffs. Consistent with the decisions of other courts in this District presented with similar issues, the Court enters summary judgment in favor of the Department and affirms the decision of SRO Bates as to the reimbursement of transportation costs.

### B. Whether Plaintiffs State a Viable § 1983 Claim

#### 1. Governing Legal Framework

Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979). Under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978), a "governmental entity like [the] DOE is subject to municipal liability under section 1983," so long as the plaintiffs demonstrates the existence of a municipal policy that causes the plaintiffs to be subjected to the deprivation of a federal right, *see BD v. DeBuono*, 130 F. Supp. 2d 401, 437 (S.D.N.Y. 2000).[9]

[9] There are four ways to establish the existence of an official policy or custom—the first element of a *Monell* claim. A plaintiffs may plead that the constitutional violation was caused by:

"It is well settled, however, that a plaintiff asserting a constitutionally based [section 1983] claim for procedural violations of the IDEA must establish a constitutional violation outside the scope of the IDEA." *L.B. v. New York City Dep't of Educ.*, No. 21 Civ. 6626, 2023 WL 1779550, at *13 (S.D.N.Y. Feb. 6, 2023). Put differently, a plaintiff cannot seek redress under § 1983 for violations of procedural due process under the Fourteenth Amendment "if the violations for which she seeks redress are actionable under the IDEA." *Engwiller v. Pine Plains Cent. Sch. Dist.*, 110 F. Supp. 2d 236, 250–51 (S.D.N.Y. 2000); *see also Bonar v. Ambach*, 771 F.2d 14, 18 (2d Cir. 1985) ("allegations of due process violations" under Section 1983 must "state a claim outside the scope of" the IDEA to be actionable); *Streck v. Bd. of Educ. of E. Greenbush Sch. Dist.*, 280 F. App'x 66, 68 (2d Cir. 2008) (summary order) ("[P]laintiffs may not rely on § 1983 to pursue monetary damages for violations of the IDEA" where "they were afforded a hearing before an impartial hearing officer and review by a state review officer").

**2. Application**

Plaintiffs argue that the DOE's failure to comply with the May 30, 2023 FOFD deprived them of rights secured under federal law, giving rise to a viable § 1983 claim. Dkt. 1 ("Compl.") ¶¶ 42–46. They argue that the Department's "pattern of obstruction and delay" constitutes an official policy or custom sufficient to establish its liability under *Monell*. Pls' Mem. at 23–24.

---

> (1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question; (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware; or (4) a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees.

*Brandon v. City of New York*, 705 F. Supp. 2d 261, 276–77 (S.D.N.Y. 2010) (citations omitted).

Because this claim retreads plaintiffs' claims under the IDEA, summary judgment must be entered in the DOE's favor.

Plaintiffs do not allege any independent basis for their § 1983 claims. Their § 1983 challenge is that, the Department has "inappropriate policies and procedures," "fail[ed] to abide by existing policies and procedures," and "fail[ed] to supervise and/or train their employees" in implementing final administrative orders in proceedings brought under the IDEA. Compl. ¶¶ 44 (a)–(b), (e). Applied to A.F., however, each such assertion tracks plaintiffs' IDEA claims. *See id.* ¶ 45 ("Defendants' failure and/or refusal to implement and/or comply with the IHO Decision issued in proceedings brought under the IDEA as detailed above deprived, and continues to deprive, the Plaintiff and the Plaintiff's disabled Student, of their rights under the IDEA . . .in violation of 42 U.S.C. § 1983"). Accordingly, on plaintiffs' claims under § 1983 for failure to provide A.F. a FAPE, or for systemic violations of the IDEA, the Court grants summary judgment in defendants' favor. *See, e.g.*, *M.M. v. New York City Dep't of Educ.*, No. 15 Civ. 5846, 2017 WL 1194685, at *12 (S.D.N.Y. Mar. 30, 2017) (plaintiff not entitled to relief based on indistinguishable § 1983 and IDEA claims); *Luo v. Baldwin Union Free Sch. Dist. & Michelle Gallo*, No. 12 Civ. 3073, 2016 WL 154091, at *7 (E.D.N.Y. Jan. 12, 2016)(awarding defendant summary judgment because plaintiffs' "[§ 1983 and IDEA] claims are duplicitous," and plaintiff had not proven a constitutional violation outside the scope of the IDEA), *aff'd in part sub nom. Luo v. Baldwin Union Free Sch. Dist.*, 677 F. App'x 719 (2d Cir. 2017) (summary order); *see also Schultz v. Inc. Village of Bellport*, 479 F. App'x 358, 360 (2d Cir. 2012) (summary order) (because plaintiff "was unable to establish an underlying violation of his constitutional rights[,]" his "*Monell* claim necessarily fail[ed]"); *French v. New York State Dep't of Educ.*, 476 F. App'x

468, 473 (2d Cir. 2011) (summary order) (affirming dismissal of § 1983 claim where "it lacks any factual basis other than the alleged IDEA violations").

### C. Whether Plaintiffs Are Entitled to Attorney's Fees

Plaintiffs lastly move under the IDEA for attorney's fees and costs incurred in securing compliance with the FOFD and litigating this summary judgment action. Dkt. 21 at 30. The IDEA permits recovery of "reasonable attorneys' fees" and costs incurred if a parent of the child with a disability is the "prevailing party" in the litigation. 20 U.S.C. § 1415(i)(3)(B)(i). To constitute a prevailing party, a plaintiff must achieve some material alteration of the legal relationship of the parties that is judicially sanctioned. *See Lackey v. Stinnie*, 604 U.S. 192, 204 (2025); *A.R. ex rel. R.V. v. N. Y. City Dep't of Educ.*, 407 F.3d 65, 67–72 (2d Cir. 2005); *K.E. v. New York City Dep't of Educ.,* No. 21 Civ. 2815, 2022 WL 4448655, at *11 (S.D.N.Y. Sept. 23, 2022), *aff'd sub nom. Y.G. v. New York City Dep't of Educ.*, 2025 WL 2080218 (2d Cir. July 24, 2025) ("[C]ourts should grant an award of attorney's fees and costs when a party succeeds on any significant issue in litigation that achieves some of the benefit that the parties sought in bringing the suit"); *see also S.S. v. New York City Dep't of Educ.*, No. 23 Civ. 8913, 2025 WL 1042286, at *2 (S.D.N.Y. Jan. 30, 2025).

Insofar as plaintiffs seek reasonable attorney's fees incurred in litigating this summary judgment action or *Frias I* relating to the tabulation of reimbursement for specialized transportation services, such request lacks merit. Although plaintiffs earlier prevailed as the denial of a FAPE, plaintiffs have not prevailed to the measure of transportation reimbursement, whether before this Court or the SRO. *See, e.g.*, *N.B. v. Sachem Cent. Sch. Dist.*, No. 24 Civ. 4758, 2026 WL 820697, at *6 (E.D.N.Y. Mar. 25, 2026) (denying request for attorney's fees under IDEA after plaintiff lost before SRO and court granted summary judgment for the DOE); *Mr. Mrs. G. v. Trumbull Connecticut Bd. of Educ.*, No. 04 Civ. 1653, 2005 WL 544711, at *3 (D.

Conn. Feb. 24, 2005) (denying attorney's fees where plaintiffs failed to show they are the "prevailing parties within the meaning of the IDEA").

To the extent plaintiffs seek attorneys' fees as to any earlier administration proceedings, for example, their enforcement of the May 30, 2023 FOFD entitling A.F. to tuition and related services at iBrain, that is not before this Court in this action. Fee applications under the IDEA must meet standards of specificity to enable a court to reliably determine whether the fees claimed represent time reasonably expended on the matter in question, using a reasonable hourly rate in light of the prevailing rate in the community and counsel's experience. *See, e.g.*, *New York State Ass'n for Retarded Child., Inc. v. Carey*, 711 F.2d 1136, 1142 (2d Cir. 1983); *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) (same). Plaintiffs have not attached any supporting documentation here. The Court does not have occasion here to consider such relief. *See B.A. v. New York City Dep't of Educ.*, No. 24 Civ. 7676, 2026 WL 473230, at *2 (S.D.N.Y. Feb. 19, 2026) (declining to award of attorneys' fees under the IDEA where plaintiff sought such an award in their complaint but "d[id] not move for summary judgment on fees"). This outcome is without prejudice to plaintiffs' right, in an appropriate proceeding, to pursue such relief.

## CONCLUSION

For the foregoing reasons, the Court holds that the DOE is obligated to reimburse plaintiffs for specialized transportation by Sisters at the rate of $375 per day for the 2021–22 school year and at the rate of $405 per day for the 2022–23 school year for those days A.F. physically attended iBrain. Plaintiffs shall submit to the DOE paperwork reflecting the days of A.F.'s actual attendance at iBrain to enable the DOE to promptly process the reimbursements consistent with this Opinion and Order. *See Donohue*, WL 6386014, at *12. The Clerk of Court is respectfully directed to terminate the motion pending at dockets 59 and 67.

SO ORDERED.

Paul A. Engelmayer
PAUL A. ENGELMAYER
United States District Judge

Dated: August 13, 2026
New York, New York